GAINER *v.* NELSON.

NAVIGABLE WATERS—OBSTRUCTIONS—REMOVAL—POWER OF SUPER-
VISORS.

Section 2494, 1 Comp. Laws, authorizing the board of supervis-
ors to provide for the removal of any obstruction arising from
the collecting of logs or rafts in a navigable stream by any
individual, does not contemplate that the board shall engage
in removing obstacles to free navigation that have existed
for half a century, but refers to removing obstructions con-
currently created, and a contract by the board with individ-
uals employing them to remove such obstructions providing
that they shall have as compensation whatever they may
obtain as salvage from timber and forest products reclaimed
from the streams of the county, conveys no title to such prod-
ucts.

Appeal from Cheboygan; Shepherd, J. Submitted
October 11, 1906. (Docket No. 62.) Decided February
5, 1907.

Bill by William H. Gainer and Henry Storms against
John M. Nelson to restrain the removal of timber and logs
from certain lakes and streams. From an order sustain-
ing a general demurrer, complainants appeal. Affirmed.

*Charles R. Henry*, for complainants.

*Frost & Sprague*, for defendant.

MONTGOMERY, J. This is an appeal from an order
sustaining a general demurrer to the bill of complaint.

The bill charges, in substance, that Cheboygan river,
Indian river, Mullet Lake, Black river, and Upper Black
river are streams and lakes within the borders of Cheboy-
gan county, and in said waters, and in the banks, chan-
nels, bottoms, and otherwise, are logs and forest products

and timbers, which are fast, partially or wholly, imbedded in the soil or otherwise of the bottom or banks of said streams and waters, which said logs, timbers, and forest products retard the natural flow of the water in the channel of said streams and impede and endanger all kinds of navigation in and upon said waters; that the logs and timber, snags, deadheads, stumps, and other obstructions so in said waters on the bottoms thereof and on the banks thereof greatly endanger, retard, and prevent the proper, lawful, and ordinary use of said waters for the purposes mentioned in the last paragraph, and it is almost impossible for any kind of water craft, from a rowboat to a steamboat, to navigate said waters without injury to the boat, as well as danger to the occupants thereof; that the board of supervisors have by public notice required owners and claimants of logs and deadheads to remove the same from the streams; that on the 9th of September, 1905, the board, acting through a committee, made a contract with complainants which provided that complainants should within three years remove all snags, deadheads, and obstructions in these waters, and retain as pay for such work whatever they should "be able to collect or obtain as salvage from said logs or obstructions so removed." The bill avers that defendant was, on the 13th of September, 1905, engaged in removing from the Cheboygan river deadheads, logs, and timber. The bill prays an injunction prohibiting defendant from removing any logs from the stream.

It is seen that the theory of the bill is that by the contract with the committee of the board of supervisors the complainant acquired a present title or interest in all the timber and deadheads in the stream at the date of the contract. It is very doubtful whether the parties to this agreement intended that any present title or right was conveyed. It is a reasonable construction that the complainants were expected to accept as compensation such "salvage" as they might obtain from the logs removed at the time when under the contract they should—at any

time within three years — remove them. There was no grant of the timber in terms to complainants. If it be assumed that there was an attempt to vest a present interest in complainants, the question arises whether the board had the authority to make such a contract.

Numerous reasons are urged against this claimed power:

(1) That this is an attempted work of internal improvement; (2) that the attempt to confer title to these logs on complainants is an attempt to confiscate the property without due process of law; and (3) that the statute relied upon for authority is not broad enough to confer power upon the board to make the contract in question.

It implies no want of appreciation of the force of the two first contentions that we rest our decision upon the third. The statute relied upon is 1 Comp. Laws, § 2494, which reads:

" Every such board of supervisors shall have power, within their respective counties, to permit or prohibit the construction of any dam or bridge over or across any navigable stream. They shall also have power to provide for the removal of any obstruction arising from the erection of booms, or collecting of logs or rafts in such streams by any individual, and to direct the time in which, and places where, persons having logs, rafts and boats in such streams shall be allowed to remain, and when the same shall be removed; and may impose such penalties as they deem necessary to enforce such regulations, and authorize the sheriffs, or their deputies, to carry into effect the regulations made under the provisions of this act."

The complainants' counsel attempts to eliminate from the statute what does not apply to this case, and produces the following:

"Every such board of supervisors shall have power, within their respective counties * * * to provide for the removal of any obstruction arising from the * * * collecting of logs * * * in such streams, by any individual."

We think this abstract omits controlling words of the

statute.   The section read as a whole contemplates regulation of the uses of streams for navigation, and the enforcement of such regulations by penalties, and further empowers the board to authorize the sheriff or his deputies to carry the regulations into effect.   The statute authority is directed to the removal of obstructions *arising from* the erection of booms, or *collecting* of logs, or rafts, in such stream by any *individual*.   It is manifest that obstructions by booming logs, or collecting logs in rafts, are the obstructions meant.   It was not contemplated that the board should engage in removing obstacles to free navigation which had existed for half a century.   On the contrary, the regulation of the use of the stream by removing obstructions concurrently created was contemplated.   The circuit judge was right in sustaining the demurrer.

Decree is affirmed, with costs.

GRANT, BLAIR, OSTRANDER, and HOOKER, JJ., concurred.